## WILLIAMS v. WILLIAMS.

### Opinion delivered April 20, 1914.

1. APPEAL AND ERROR—PREJUDICIAL ERROR—REVERSAL.—The Supreme Court will reverse a cause only for errors which are prejudicial to the rights of the party appealing. (Page 511.)

2. APPEAL AND ERROR—PARTIES—PREJUDICE.—In an action in replevin, defendant is not prejudiced by the fact that plaintiff, who claimed the right of possession of the property in controversy, joined her son with her in the action. (Page 511.)

3. WITNESSES—CREDIBILITY—PROVINCE OF JURY.—The jury are the sole judges of the credibility of witnesses and of the weight to be given to their testimony. (Page 511.)

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial on the ground of newly discovered evidence is properly denied where the evidence was germane to the only issue in the case, and could have been discovered by proper diligence before the trial. (Page 511.)

5. TRIAL—KEEPING JURY TOGETHER—DISCRETION OF COURT.—In a civil trial the jury may be permitted to separate, either during the trial or after the case is submitted to them. Kirby's Digest, § § 6198 and 6199. (Page 513.)

6. TRIAL—KEEPING JURY TOGETHER—RIGHT TO TALK TO OUTSIDE PARTY.—
Where the jury is permitted to separate after the case is submitted
to them, a juror may necessarily speak to a person with whom he
comes in contact, and the burden is upon the party attacking the
verdict to show that the conversation had with the outside party
was in violation of the admonition of the court, not to talk about
the case. (Page 513.)

7. JURY—VERDICT—POLL OF JURY.—Under Kirby's Digest, § 6203, when
a verdict is announced, either party may require the jury to be
polled, and if any one answers in the negative, the jury must again
be sent out for deliberation. (Page 513.)

8. JURY—POLL—ANSWER IN NEGATIVE.—When, on a poll of the jury, a
juror answered that he did not believe the verdict right, but
agreed to it for the sake of harmony, it will not be held that he
answered in the negative, but that he answered in the affirmative
that the verdict was his own. (Page 513.)

Appeal from Clay Circuit Court, Western District;
*W. J. Driver,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is a suit by Cinda Williams and Ed Williams
against Susie Williams to recover the possession of a
team of mules valued at five hundred dollars. Cinda
Williams for herself testified substantially as follows:

I am the owner of the mules in controversy. In the
year 1906 I purchased two mules from J. M. Hawks, and
later on swapped these two mules, with their harness, for
the mules in controversy, and gave twenty dollars in
exchange. My husband had been dead about a year be-
fore I purchased the mules. My sons all lived at home
with me at the time I bought them, but in the spring of
1909 I permitted my son, Lon Williams, to take the mules
away from my house and to keep them until his death in
December, 1912. After the mules were in the possession
of my son, Lon, I always furnished the money to him
with which to pay the taxes on them. A few days be-
fore he died, I was at his house, and he told me that he
would never be able to work any more and that I could
take the mules home. His widow, Susie Williams, came
home with us after the funeral in a wagon drawn by the
mules in controversy. Before she went home I told her

that the mules belonged to me. She drove them home, however, and subsequently refused to give them to me, and I brought this suit to recover possession of them.

Two other children of Mrs. Williams testified that the mules belonged to their mother, and that she always furnished the money with which to pay the taxes on them after she let her son Lon have them.

J. M. Hawks, for the defendant, testified substantially as follows:

I do not remember definitely, but my impression is that I sold the pair of mules to Lon Williams, and not to his mother. I know that subsequently Lon Williams claimed the mules, and, with my advice, swapped them for the mules in controversy. Mrs. Susie Williams testified for herself as follows:

I was married to Lon Williams about three years before he died, and at the time of our marriage he had the mules in controversy in his possession. He claimed them as his own, and neither Cinda Williams, his mother, nor any of her children, claimed to have any interest in them. After the funeral of my husband I went home with Mrs. Cinda Williams and stayed all night. We went to the funeral in a wagon drawn by the mules in controversy. While I was at the home of Cinda Williams, after the funeral, she told me that the mules should not be taken off of the place, and said that they were her mules.

Other evidence was introduced by Susie Williams tending to corroborate her testimony.

The jury returned a verdict for the plaintiffs, and the defendant has appealed.

*C. T. Bloodworth,* for appellant.

1. One who has no interest in property, can not jointly maintain an action for recovery. 14 Ark. 151; *Id.* 141; 25 Ark. 458; 1 Am. & Eng. Ann. Cas. 981, and notes; 34 Cyc. 1424.

2. The evidence is clear that Lon Williams held possession and control of the mules for more than three years prior to the commencement of the action. The action was barred. 44 Ark. 29; Kirby's Dig., § 5064.

3. The verdict should have been set aside because of the conduct of the jury in separating without permission of the court, after they had retired to consider of their verdict, and because some of them were seen talking to parties other than those having authority to address them. Kirby's Dig., § 6198; 95 Ark. 428.

4. A new trial should have been granted because of newly discovered evidence on a material point, which was discovered after the trial, was not cumulative and was not and could not have been known to appellant before or during the trial. 66 Ark. 612; 99 Ark. 122; 69 Ark. 546; 97 Ark. 290; 103 Ark. 589.

5. When at the return of the verdict, one of the jurors, when they were being polled, answered, "I don't think the verdict is right, but agreed to it for the sake of harmony," the court should have refused to accept it, but should have sent the jury out again. Kirby's Dig., § 6204; 31 Ark. 196; 69 Ark. 626.

*Cinda Williams, pro se.*

1. Appellant raised no question in the lower court as to a misjoinder of parties, and can not do so here. If a defect of parties is not raised by demurrer or answer, it will be deemed as waived. 97 Ark. 560.

2. The action was not barred. The evidence is conclusive that Lon Williams merely borrowed the mules, in which case his possession would be the possession of appellee.

3. The granting of a new trial on the ground of newly discovered evidence is a matter of discretion on the part of the trial court, and unless that discretion is abused, this court will not interfere. 99 Ark. 121. Besides the evidence wanted was merely cumulative. 2 Ark. 353; *Id.* 145; 91 Ark. 492. No diligence was shown.

HART, J., (after stating the facts). Cinda Williams and Ed Williams were the plaintiffs in this action, and the jury returned a verdict for the plaintiffs. It is now contended by counsel for defendant that, under the undisputed evidence, Ed Williams had no interest in the mules,

and that he and Cinda Williams could not maintain a joint action for them. In this connection it may be stated that no objection was made to the instructions given by the court. If the jury believed the testimony of the plaintiffs, the mules belonged to Mrs. Cinda Williams, one of the plaintiffs, and it was immaterial to the defendant that she joined Ed Williams with her in the suit to recover possession of the mules. It is the settled law of this State that the Supreme Court will only reverse a judgment for errors prejudicial to the rights of the party appealing, and the defendant in this action can not be prejudiced by the fact that Ed Williams was made a party plaintiff with his mother. We have not set out the testimony in full, and do not deem it necessary to make any extended comment on it. It may be true, as stated by counsel for defendant, that the great preponderance of the evidence was in her favor, but that question was settled by the verdict of the jury, and we are not at liberty to disturb the verdict. The jury were the sole judges of the credibility of the witnesses, and the weight to be given to their testimony. According to the testimony of Mrs. Cinda Williams, the mules belonged to her, and it is not within our province to disturb the verdict, even though we may believe that the jury was wrong in its finding.

A new trial is also asked because of newly discovered evidence. Counsel for defendant say that they can prove by two of the clerks in the store of Mr. Hawks at the time he sold the mules that Mr. Hawks sold them to Lon Williams, and not to his mother. Counsel also claims that he can prove by a Mr. Shoat, the person to whom the first mules were swapped for the mules in controversy, that he swapped with Lon Williams, and that the mules belonged to him. Counsel insists that neither he nor his client knew of the existence of this testimony, and could not by reasonable diligence have discovered it before the trial. In the case of *Mutual Life Insurance Co.* v. *Parrish,* 66 Ark. 612, the court held: "To prevent a miscarriage of justice, it is proper to grant a new trial for

newly discovered evidence rebutting the undisputed evidence on which the verdict was based, where the party asking for a new trial had no knowledge of such rebutting evidence, and could not reasonably have been required to make effort to ascertain it before or during the trial." Counsel contends that the decision in that case rules his present contention. We can not agree with him. We think the case falls within the rule announced in *Petty v. State,* 76 Ark. 515, where the court held: "A party can not claim to have been surprised by the testimony of witnesses of the opposite party, nor by evidence introduced by such party, if the same tends to support the issues joined, and is such as might have been reasonably anticipated." See also *St. Louis & S. F. Rd. Co.* v. *Kilpatrick,* 67 Ark. 47; *McDonald* v. *Daniel,* 103 Ark. 589. The only question at issue in this case between the parties was that of the ownership of the mules, and counsel for defendant might have reasonably anticipated that any testimony tending to establish that issue would be introduced at the first trial. The evidence on account of which they now seek a new trial was necessarily germane to the only issue in the case, and was such that its existence must have occurred to counsel for defendant in his preparation for trial. If counsel had exercised proper diligence before the trial, he could have discovered this testimony. Two of the witnesses lived in the same community. It was the contention of the defendant that Lon Williams, her deceased husband, had purchased the mules from Mr. Hawks. Mr. Hawks was a witness, and testified in her behalf. By questioning him before the trial, she, or her counsel, could have readily ascertained that these new witnesses were employed in his store and that they might likely know something about the transaction. By exercising diligence they might have also ascertained the residence of the man with whom the swap was made.

It is next contended by counsel for defendant that the judgment should be reversed and a new trial granted because he states in an affidavit that he was present in the court room while the jury empanelled to try the case

was deliberating in the jury room, and that he saw one of the jury, while out of the jury room, conversing with a party other than the officer in whose charge the jury had been placed. In civil trials the jury may be permitted to separate either during the trial or after the case is submitted to them. Kirby's Digest, §§ 6198-6199. The record in this case does not show whether the court permitted the jury to separate. The court might do so in the exercise of its discretion, and this, we believe, is almost the universal practice in the trial of civil cases. If the jury was permitted to separate by the court, the jurors would necessarily speak to persons with whom they came in contact. If they violated the admonition of the court not to speak about the case, the burden of showing that fact would be upon the defendant, and he has not attempted to show that the conversation that the juror had in any wise pertained to the case which the jury had under consideration.

Finally, it is contended by counsel for defendant that the judgment should be reversed because when the jury announced its verdict in favor of plaintiffs, counsel for defendant asked that the jury should be polled. While this was being done, one of the jurors answered that he did not believe the verdict right, but agreed to it for the sake of harmony. Section 6203 of Kirby's Digest provides in substance that when the verdict is announced either party may require the jury to be polled, and that if any one answers in the negative the jury must again be sent out for further deliberation. In the case of *Commonwealth* v. *Tuey*, 8 Cush. (Mass.) 1, the court said:

"The jury room is, surely, no place for pride of opinion, or for espousing and maintaining, in the spirit of controversy, either side of a cause. The single object to be there effected is to arrive at a true verdict; and this can only be done by deliberation, mutual concession, and a due deference to the opinions of each other. By such means, and such only, in a body where unanimity is required, can safe and just results be attained; and without them, the trial by jury, instead of being an essential aid

in the administration of justice, would become a most effectual obstacle to it.''

While the law does not contemplate that any juror should yield his opinion for the mere purpose of agreement, it does contemplate that the jury shall, by discussion, harmonize their views, if possible, for in no other way would a verdict be possible. We think when this fact is considered, it can not be said that the juror answered in the negative, but that he simply meant to say that, after discussion of the case with the other jurors in an effort to harmonize the views of the individual jurors, he had receded from the position first taken by him when the jury retired to deliberate. In other words, we think that he did not answer in the negative, but answered in the affirmative that the verdict was his own. Therefore, the judgment should not be reversed on this account.

It follows from what we have said that we find no prejudicial error in the record, and the judgment must be affirmed.