## MOODY EQUIPMENT & SUPPLY COMPANY
### *v.* UNION NATIONAL BANK, Administrator et al

81-10                                        619 S.W. 2d 637

Supreme Court of Arkansas
Opinion delivered July 13, 1981

*Thurman & Capps, Ltd.*, by: *Paul D. Capps*, for appellant.

*McMath & Leatherman, P.A.*, by: *Sandy S. McMath*, for appellees.

GEORGE ROSE SMITH, Justice. In this action for the wrongful death of William Dale Pryor, brought by the appellee bank as administrator, the jury's verdict was for the

defendant, Moody Equipment & Supply Company. The trial judge, however, granted the plaintiff's motion for a new trial for misconduct of a witness for the defendant. ARCP, Rule 59(a). For reversal Moody argues that it was entitled to a directed verdict and that the trial court abused its discretion in granting a new trial. The case falls within our jurisdiction under Rule 29 (1) (o).

The complaint, among other allegations, asserted that Moody was strictly liable for having sold a used crane that was so defective as to make it unreasonably dangerous. Ark. Stat. Ann. § 85-2-318.2 (Supp. 1979). At the time of the accident the decedent, an employee of the general contractor on a building construction job, was loading plywood onto a harness so that it could be lifted by the crane. The crane's boom was extended over a high voltage line. The plaintiff's proof indicated that the piston cups in the crane's hydraulic system were so worn by long use that the fluid bled out. The resulting loss of compression caused the crane's boom to inch downward about four feet and touch the power line, electrocuting Pryor.

Moody does not seriously deny that it was at fault in selling the crane without having inspected the piston cups, but it argues that its negligence was superseded by various intervening causes, such as the contractor's failure to have the power line de-energized, the omission of several safety measures required by Ark. Stat. Ann. §§ 81-1405 and -1406 (Repl. 1976), and the crane operator's failure to discontinue its use after the boom had unaccountably descended earlier on the same day. The jury, however, could have found from the evidence that the possibility of such occurrences was reasonably foreseeable in the ordinary course of the crane's intended use in construction work, so that the later acts of negligence by third persons became merely concurrent, not superseding, causes of Pryor's death. See *Franco* v. *Bunyard*, 261 Ark. 144, 547 S.W. 2d 91 (1977), cert. den. 434 U.S. 835 (1977); *Hartsock* v. *Forsgren*, 236 Ark. 167, 365 S.W. 2d 117 (1963). Hence Moody was not entitled to a directed verdict.

Second, near the end of the trial the plaintiff moved for a mistrial on the ground that two of Moody's witnesses,

Jordan and Andrews, had been seen in conversation with jurors. The court at once conducted a hearing in chambers, but nothing of a seriously prejudicial nature developed. In particular, Andrews testified only that he had talked with one juror about having been in the military service and had recommended a Little Rock hotel to another juror. The court did not make a ruling, because at the close of the in-chambers hearing the plaintiff withdrew its motion for a mistrial.

After the verdict, however, the plaintiff raised the point again in a motion for a new trial. This time the proof developed misconduct not touched upon at the in-chambers hearing and not then brought to the attention of the plaintiff's attorney. A witness testified that during a recess a female juror had mentioned Andrews's blue eyes to him in a "downright flirty" manner. Another witness testified that he heard Andrews ask a juror (presumably the same one) where she lived and if it would be all right if "they" came to see her sometimes; she said she'd be glad if they did. Andrews admitted that the juror told him he had pretty blue eyes, but he denied the rest. The trial judge evidently accepted the other testimony, which would indicate that Andrews had not been completely candid at the in-chambers hearing during the trial.

To reverse the judgment we would have to say that the trial judge abused his discretion in granting the motion for a new trial. It is fundamental, however, that the latitude of the trial judge's discretion increases proportionately as the situation presents to him a question that cannot equally well be presented to us by the printed record. For instance, we seldom reverse the trial judge's decision to grant a new trial on the grounds that the jury's verdict was in his opinion contrary to the preponderance of the testimony. See *Smith* v. *Villarreal*, 253 Ark. 482, 486 S.W. 2d 671 (1972). There he has the unique advantage of having heard the testimony at firsthand. Again, we have deferred scores of times to the trial judge's ruling upon a motion for a continuance. There he knows, for instance, as we cannot know, the propensity of a certain lawyer to seek a continuance in every case, or a docket condition that justifies a delay only for the strongest of

reasons, or other matters not to be found in the printed record.

This case properly falls in the same category with respect to the trial judge's discretion. This trial judge had heard all the testimony and was in a position far superior to ours to know whether the proof was so nearly balanced that the misconduct of a witness and juror might have tipped the scales one way or the other. The trial judge had the advantage of having observed the witness Andrews at the in-chambers hearing, when the witness was understandably apologetic about having spoken to jurors at all. The trial judge was of course familiar with the courthouse in which the case was tried and knew to what extent its adequacy or deficiencies might or might not have brought witnesses and jurors into unavoidable contact with one another during recesses. In a situation such as the one presented by this case, it is not our place to set aside the trial judge's decision unless we can say with confidence that his discretion was markedly abused. Here we cannot make that statement.

Affirmed.

ADKISSON, C.J., and PURTLE, J., dissent.

JOHN I. PURTLE, Justice, dissenting. As far as I am able to ascertain this is the first time in history that a jury verdict has been set aside because one of the jurors stated one of the witnesses had "pretty blue eyes." In fact, during my trial days I heard similar remarks on a number of occasions and the thought never occurred to me, nor apparently to the court, nor even to the opposing attorney, that there was anything wrong with this. Even a juror must continue to live a fairly normal life during the time he is serving in that capacity. In fact, one of the instructions admonishes the jury not to disregard their common sense in matters of daily life. The jury is admonished not to talk about the case. They are not admonished not to talk to anyone.

The majority correctly determined that the evidence was sufficient to support the verdict rendered by the jury in this case. They could not reverse the case on the facts;

therefore, they trudged along with the trial court who set aside a verdict because of an exchange of pleasantries between one of the appellee's witnesses and a juror. I cannot find an Arkansas case where such action was taken by a trial court. However, the appellant has cited three cases where improper conduct of a juror was alleged and the trial court refused to set aside the verdict. In each case we affirmed the trial court.

In the case of *Williams* v. *Williams*, 112 Ark. 507, 166 S.W. 552 (1914), a new trial was requested because the counsel for the defendant signed an affidavit in which he alleged one of the jurors was outside the jury room talking to a person other than the officer in charge of the jury. He further alleged the jury was deliberating the case at that time. The court stated:

> . . . If the jury was permitted to separate by the court, the jurors would necessarily speak to persons with whom they came in contact. If they violated the admonition of the court not to speak about the case, the burden of showing that fact would be upon the defendant, and he has not attempted to show that the conversation that the juror had in any wise pertained to the case which the jury had under consideration.

In the case of *Midland Valley Railway Co.* v. *Barkley*, 172 Ark. 898, 291 S.W. 431 (1927), a new trial was sought on the grounds that a juror had been guilty of misconduct. The conduct consisted of the juror riding back and forth from his home to the courthouse in the plaintiff's automobile and thereafter paying for the plaintiff's dinner in return for the courtesy. The trial court refused to set aside the verdict and this court affirmed. There is no evidence in the present case that anyone was given a ride or furnished a dinner, or a cigar, or a soft drink, or promised anything whatsoever. Certainly *Barkley* would be more compelling for setting aside the trial than the present case.

A third case which deserves mention is that of *St. Louis Southwestern Railway Co.* v. *Ellenwood*, 123 Ark. 428, 185 S.W. 768 (1916). This case states that the conduct of jurors

being treated to cigars and soft drinks by plaintiff's counsel during the trial did not warrant a setting aside of the verdict. Again, the trial court refused to set aside the verdict and this court affirmed.

In the present case appellee's attorney reported to the court that Jordan and Andrews were talking to jurors during a recess. These two witnesses, one of whom was appellant's witness, informed the court that the appellee's expert witness, Don Eppinette, was with them during the time the parties were talking to the juror. Appellant's counsel at that time suggested that the juror be called in and questioned about the matter. Appellee's attorney would not agree to this suggestion and in fact withdrew his previous motion for a mistrial. It is obvious that the appellee felt it was best to take his chance on completing the trial and in the event of unfavorable results to try to get a second shot at it. This is exactly what the majority has agreed to do. There is not one single word by any witness for any party to the effect that the case being tried was even remotely referred to in the alleged misconduct. One would have to speculate in order to say that a juror violated the admonition given to him by the court. That admonition is not to speak to anyone about the case. This juror did not speak to anyone about the case; certainly the witness's blue eyes were not the subject of this lawsuit. Neither the trial court nor this court has any authority whatsoever from any source to attempt to completely control the conduct of people who are participating in a trial. All that is required or needed is that the parties obey the instructions of the court. As far as this record shows, that admonition was strictly followed by all members of the jury. The conversation by appellant's attorney with a juror after the trial was completely in order.

Until now I had thought that there was a firmly established principle of law that a party will be deemed to have waived, or will be estopped to rely upon an error or grounds for mistrial, which came to his attention during the trial, if he failed to make the proper objection.

We dealt with this subject matter in a case which is somewhat analogous to the present one in *Arkansas High-*

*way Commission* v. *Kennedy*, 233 Ark. 844, 349 S.W. 2d 133 (1961). There we stated:

> Under our statutes, as well as the practice in this State, it is too late after the rendition of a verdict, to raise the ineligibility of a juror to serve, unless it can be shown by the complaining party that diligence was used to ascertain his disqualification and to prevent his selection as a juror. See: *Missouri Pacific Railroad* v. *Bushey*, 180 Ark. 19, 20 S.W. 2d 614.

In the present case Andrews was called to the trial by the appellee. Also, his star witness, Eppinette, was present during the conversation. Certainly the appellant had ample opportunity to question these witnesses and upon his failure to do so he waived the matter of misconduct of a juror. I would reverse.

ADKISSON, C.J., joins in this dissent.