FARM BUREAU MUTUAL INSURANCE COMPANY
OF ARKANSAS, INC. *v.* W. R. SMITH
and Wray B. SMITH

CA 81-248                                    632 S.W.2d 244

Court of Appeals of Arkansas
Opinion delivered May 5, 1982

*Samuel N. Bird* of *Williamson, Ball & Bird,* for appellant.

*L. David Stubbs,* for appellee.

MELVIN MAYFIELD, Chief Judge. The appellant, Farm Bureau Mutual Insurance Company, was sued on a home-owners policy and the jury returned a verdict for the company. This appeal is from the granting of a motion for new trial. We find the motion should not have been granted.

Appellees' motion was based on an allegation of juror misconduct consisting of a statement said to have been made by one of the jurors during jury deliberations. The motion was accompanied by the affidavit of a juror who also testified at the hearing on the motion. While it is not entirely

clear from the appellant's abstract (there is no supplemental abstract by the appellees), we accept the assertion in appellees' brief that the affidavit and testimony by the one juror was that the other juror said "it's lawsuits like this that will make all our insurance premiums go up."

In its order granting a new trial, the court said while the testimony did not prove that appellees did not receive a fair trial, "with this shadow over the jury's deliberations it cannot be said plaintiffs did receive a fair trial."

The appellant objected to the trial court's consideration of the juror's affidavit and to the introduction of the juror's testimony at the hearing. The admissibility of such evidence is governed by our Uniform Rules of Evidence 606 (b), which states:

> (b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to asset [assent] to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Prior to the adoption of Rule 606 (b) we had a statute which provided: "A juror cannot be examined to establish a ground for a new trial, except it be to establish, as a ground for new trial, that the verdict was made by lot." In *Strahan* v. *Webb*, 231 Ark. 426, 330 S.W.2d 291 (1959), the court said the statute was based on the logic of the following statement from 53 Am. Jur. *Trial* § 1105 (now 76 Am. Jur. 2d *Trial* § 1219 [1975]):

The rule is founded on public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during the deliberations of the jury or afterward. It is to prevent overzealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath.

Testimony of the jurors to impeach their own verdict is excluded not because it is irrelevant to the matter in issue, but because experience has shown that it is more likely to prevent than to promote the discovery of the truth. Hence, the affidavit of a juror cannot be admitted to show anything relating to what passed in the jury room during the investigation of the cause, or the effect of a colloquy between the court and a juror, or the arguments made to a juror by a fellow juryman. The rule that a verdict cannot be impeached by the testimony of a juror is generally adhered to where it is sought to impeach a verdict on grounds of misconduct on the part of the juror or his fellow jurors, despite apprehension expressed in many cases that such rule sometimes serves the cause of injustice.

After Uniform Evidence Rule 606 (b) became effective, the Arkansas Supreme Court reaffirmed the long-standing attitude demonstrated in *Strahan* v. *Webb* by affirming the trial court's refusal to grant a new trial based on juror affidavits in *Sanson* v. *Pullum*, 273 Ark. 325, 619 S.W.2d 641 (1981). The court said:

The jurors' affidavits were clearly inadmissible. Uniform Evidence Rule 606 (b) states plainly that a juror may not testify as to the effect of anything upon his mind as influencing him to assent to the verdict, nor

may his affidavit be received concerning a matter about which he is precluded from testifying. We take this opportunity to state unequivocally, for the guidance of the bar, that in our opinion it is improper for a lawyer to interview jurors after a trial in an effort to obtain such inadmissible affidavits to impeach their own verdict.

See also *Garner* v. *Finch*, 272 Ark. 151, 612 S.W.2d 304 (1981).

In the instant case, the statement "it's lawsuits like this that will make all our insurance premiums go up" is simply an expression of opinion on the merits of the appellees' case. It therefore falls within the proscription of Rule 606 (b) and could not properly be considered as the basis for the granting of the motion for new trial. But even if the statement is not regarded as a comment on the merits of appellees' case, it would still not meet the rule's admissibility requirement of "extraneous" prejudicial information "improperly" brought to the jury's attention.

This is because the appellees' claim in this case is based upon the alleged failure of the insurance company to see that the appellees' house was properly repaired by the building contractor. The amount of the premium paid for the insurance was in evidence and in closing argument appellant's attorney told the jury that premiums would have to increase if companies were required to inspect the construction on the repair jobs for which they paid. Thus, in this case, the matter of an increase in premiums was before the jury without objection and was not "extraneous" information "improperly" brought to its attention.

Appellees contend the evidence by the juror was admissible to show prejudice and bias against them and in favor of the insurance company. In support of that contention the appellees cite *Shipley* v. *Permanente Hospitals*, 127 Cal. App. 2d 417, 274 P. 2d 53 (1954), where the court allowed juror affidavits which stated that during deliberations other jurors had admitted their general bias against verdicts for doctors in malpractice cases.

We think that case involved a different situation. Here, there was no evidence that any juror admitted bias or prejudice against the claims of insureds generally or the claims of these appellees specifically. To allow the evidence in this case to impeach the jury's verdict would violate evidence Rule 606 (b) and the public policy that protects the privacy of the jury room — a policy which experience has shown helps the jury's verdict to reflect the truth.

The order granting a new trial is reversed and the case is remanded with directions to enter judgment in accordance with the jury's verdict.