2009 Ark. App. 479

**Lee CAMPBELL, Appellant,**

v.

**Michael E. HANKINS, Appellee.**

**No. CA 08–1163.**

Court of Appeals of Arkansas.

June 17, 2009.

Wright, Lindsey & Jennings, LLP, by: Kathryn A. Pryor and Gary D. Marts, Jr., Little Rock, for appellant.

Ramsay, Bridgforth, Harrelson and Starling LLP, by: William M. Bridgforth, Pine Bluff, for appellee.

M. MICHAEL KINARD, Judge.

In this suit for personal injuries, appellee, Ms. Michael Hankins, sued appellant, Mr. Lee Campbell, for damages arising

out of a vehicle collision. The collision took place in Pine Bluff, Arkansas, on May 17, 2004, at the intersection of Cherry Street and Thirteenth Street. Hankins, who was not subject to a stop sign, struck the side of the vehicle driven by Campbell, who had a stop sign on Thirteenth Street. Hankins filed suit in January 2006, alleging that Campbell had been negligent in failing to stop at the stop sign on Thirteenth Street, failing to maintain a proper look out, and failing to yield the right of way to her.

At the jury trial, Hankins testified that the accident occurred when she was driving down Cherry Street and a car came out of nowhere; she hit Campbell's vehicle because she did not have time to stop. She stated that it was her belief that Campbell ran the stop sign on Thirteenth Street. Hankins testified that she went to South |₂Arkansas Orthopedic the day after the accident for neck pain; after an x-ray, the doctor instructed her to take ibuprofen and told her to continue her normal activities. She did not have another doctor's appointment until January 2005, at which time an MRI revealed evidence of disc herniation. Prior to the initiation of the lawsuit, Hankins saw more than one doctor and underwent physical therapy. She testified that after the accident she has continued to exercise. On cross-examination, Hankins conceded that she did not know the speed limit on Cherry Street and that she was not able to testify as to how fast she was going when the accident occurred.

The police officer on the scene of the accident testified that Campbell told her that he ran the stop sign, causing Hankins's vehicle to strike him. No one reported any injuries at the scene of the accident.

Campbell testified that he did stop at the stop sign; he looked left, then right, took off, and when he looked left again,

Hankins was "right there." He testified that he had not seen Hankins the first time he had looked left. He stated that he should have explained himself to the police officer. Campbell testified that he was at fault for the accident, "but not totally at fault."

Both sides offered expert testimony regarding Hankins's alleged injuries. During her case-in-chief, Hankins called Dr. Ronald Pritchard, a radiologist. Dr. Pritchard testified that he was involved in the diagnosis of cervical disc herniations in Hankins. He further testified that it was his opinion that it is more probable than not that the |₃motor vehicle accident was the cause of the herniations. Campbell offered the deposition testimony of Dr. Scott Schlesinger, a neurosurgeon. Dr. Schlesinger testified that, based on his review of Hankins's medical records, her deposition testimony, and her MRI films, it was his opinion that it would be impossible to conclude that the accident caused the herniations.

Prior to deliberations, the jury was instructed as follows:

Ladies and gentlemen, you have heard all the testimony and received all the evidence that you are going to receive in this case, and it is now time for me to instruct you as to the law.

.     .     .     .     .

It is your duty to determine the facts from the evidence produced in this trial. You are to apply the law as contained in these instructions to the facts and render your verdict upon the evidence and the law. . . . In deciding the issues, you should consider the testimony of the witnesses, the exhibits received in evidence.

In addition to the instructions regarding negligence and the rules of the road, the jury was given the AMI instruction on the

issue of comparative negligence between the parties.

The jury returned a general verdict, in which they found "against Michael Hankins in her complaint against Lee Campbell." Only ten of the twelve jurors signed the verdict form. The circuit court entered a judgment for Campbell on April 4, 2008. Hankins filed a motion for a new trial on April 14, 2008, on the following bases: (1) that the decision of the jury was clearly contrary to the preponderance of the evidence presented at trial; (2) irregularities in the proceedings and misconduct of jurors prevented plaintiff from getting a fair trial. Attached to the motion were the affidavits of two jurors, W.A. McCaskill and Harvey Spriggs. These two jurors, in identical affidavits, averred that the jury deliberations in this case were "heavily tainted by improper bias on the part of two fellow jurors (Wade and McPherson), who made it impossible for the plaintiff to receive a fair trial. All attempts at a careful, reasoned analysis or discussion of the facts of the case were met with continuous interruptions and with loud outbursts on the part of the aforementioned jurors." Furthermore, they averred that another juror, McDaniel, had made an independent investigation by going to the scene of the accident during the lunch break. According to the affidavits, McDaniel "reported the results of his investigation and his opinions regarding the same to the other jurors during deliberations. Juror McDaniel was a juror voting in favor of the defendant and I believe his actions contributed to the verdict being handed down in favor of the defendant."

The court granted the motion for a new trial "based on the evidence of misconduct by the jury." The court found that the affidavits of juror McCaskill and juror Spriggs "clearly reflect misconduct on the part of at least three jurors," that the "actions referenced in the affidavits [are] uncontroverted by the defendant," and that the "jury failed to follow the instructions of the Court by considering evidence which was not introduced into evidence." Appellant timely filed a notice of appeal, and this appeal followed.

Under Rule 59 of the Arkansas Rules of Civil Procedure, a court may grant a new trial for any of several enumerated grounds materially affecting the substantial rights of a party, including: 1) any irregularity in the proceedings by which the party was prevented from having a fair trial; 2) misconduct of the jury; 6) the verdict being "clearly contrary to the preponderance of the evidence." The test we apply on review of the granting of a new trial is whether there was a manifest abuse of discretion. *Hogan v. Holliday,* 72 Ark. App. 67, 69, 31 S.W.3d 875, 876 (2000). A manifest abuse of discretion in granting a new trial means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.* A showing of an abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id.* Accordingly, he has less basis for a claim of prejudice than does one who has unsuccessfully moved for a new trial. *Id.; see also Metzgar v. Rodgers,* 83 Ark.App. 354, 128 S.W.3d 5 (2003).

A party moving for a new trial under Ark. R. Civ. P. 59(a)(2) must demonstrate that its rights have been materially affected by the misconduct by showing that a reasonable possibility of prejudice has resulted from the juror misconduct. *See Borden v. St. Louis Southwestern Railway Co.,* 287 Ark. 316, 698 S.W.2d 795 (1985). While prejudice is not presumed, *St. Louis Southwestern Railway Co. v. White,* 302 Ark. 193, 788 S.W.2d 483 (1990), neither is there a requirement that

the moving party show actual prejudice. Once a juror has contaminated the jury's deliberations with extrinsic evidence, a new trial will be warranted if there is a reasonable possibility of resulting prejudice. *Borden, supra.* To require the losing party to prove actual prejudice would place an impossible burden upon him. *Id.*

On direct appeal, Lee Campbell argues that the circuit court erred in granting Hankins's motion for a new trial. Campbell argues that the affidavits were both (1) inadmissible under Ark. R. Evid. 606 and (2) insufficient in that they failed to show prejudice from any of the alleged juror misconduct.

Arkansas Rule of Evidence 606 provides that a juror may not testify as to what went on during deliberations except that he may testify "on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." It is clear by the plain language of the rule that the alleged "atmosphere of intimidation," "continuous interruptions," and "loud outbursts" are not matters that could properly be considered by the trial court because they are part of the internal deliberations of the jury. We do not agree with Hankins's argument that the fact that voices were raised during deliberations somehow makes this a situation where the trial court could invade the sanctity of the jury room. We note that while there was an allegation of "improper bias" contained in the affidavits, there is no indication from the record that any juror was untruthful during voir dire. Jurors are presumed to be unbiased and qualified to serve. *D.B. & J. Holden Farms Ltd. Partnership v. Ark. State Hwy. Comm'n,* 93 Ark.App. 202, 218 S.W.3d 355 (2005). Hankins's bare assertion of bias is not sufficient to overcome this presumption. Thus, to the extent the trial court considered the parts of the affidavits that referred to the internal deliberations of the jury on matters not relating to extraneous information or outside influence, this was error.

The issue before us is whether the alleged juror misconduct in visiting the scene of the accident—thus bringing in extrinsic evidence—provided a sufficient basis for the granting of a new trial. We hold that the trial court's determination on this particular point was not a manifest abuse of its discretion. Given the standard of review, the trial court's determination to grant or deny a motion for new trial is almost never overturned on appeal. *See, e.g., B. & J. Byers Trucking, Inc. v. Robinson,* 281 Ark. 442, 665 S.W.2d 258 (1984) (affirming the denial of a motion for new trial); *Borden, supra* (affirming the grant of a new trial based on two jurors going to the scene of the truck-train collision at issue); *St. Louis Southwestern Railway Co., supra* (affirming the denial of a motion for new trial). That this is an appeal from a grant of a new trial, rather than a denial, makes appellant's burden of showing an abuse of discretion even more difficult. *See Hogan, supra.*

In *Diemer v. Dischler,* 313 Ark. 154, 852 S.W.2d 793 (1993), our supreme court analyzed *Byers Trucking, supra, Borden, supra,* and *St. Louis Southwestern Ry. Co., supra,* and gleaned the following factors to be used in determining whether juror misconduct warranted a new trial: (1) whether the trial court instructed the jury not to visit the site of the accident; (2) whether the juror offender simply voiced an opinion or engaged in an experiment relating to a crucial issue; (3) whether the offending juror's observations impugned a fact presented by a party; (4) whether the affiant describes the alleged juror with sufficient specificity, which would include identifying the names of the jurors who engaged in

the acts complained of. Here, the offending juror, McDaniel, was named. Further, prior to deliberations, the jury was instructed to determine the facts from the "evidence produced in this trial." Despite this instruction, a juror went to the scene of the accident. McDaniel then "made an independent investigation of the facts of the case" and "reported the results of his investigation and his opinions regarding the same to the other jurors during the deliberations." We note that comparative negligence was at issue, and there is a reasonable possibility that McDaniel's observations and report thereon impugned facts presented by the parties.

We review the trial court's determination for a manifest abuse of discretion, keeping in mind that showing an abuse of the trial court's considerable discretion is even more difficult when a new trial has been granted. We bear in mind *Moody Equip. & Supply Co. v. Union Nat'l Bank*, 273 Ark. 319, 322, 619 S.W.2d 637, 639 (1981), where our supreme court wrote, "This trial judge had heard all the testimony and was in a position far superior to ours to know whether the proof was so nearly balanced that the misconduct of a witness and the juror might have tipped the scales one way or the other.... In a situation such as the one presented by this case, it is not our place to set aside the trial judge's decision unless we can say with confidence that his discretion was markedly abused."

After considering all of the relevant evidence, the trial court concluded that a new trial was warranted. In its findings of fact, the court concluded that the jury failed to follow the court's instructions and considered evidence not introduced into evidence. There was a reasonable possibility that a view of the scene of the collision could have swayed jurors on the issue. Moreover, the affidavits were found by the trial court to be uncontroverted, and there is no indication in the record that any of the jurors may have already been familiar with the accident scene, as Campbell did not file any competing affidavit. We simply cannot say that the trial court's decision to grant a new trial in this case constituted a manifest abuse of discretion. Therefore, we affirm on direct appeal.

Hankins cross-appeals, arguing that the circuit court erred in failing to grant her motion for a new trial on the ground that the jury's verdict was clearly against the preponderance of the evidence. Because we affirm the trial court's grant of a new trial on the basis of juror misconduct, we need not address the argument on cross-appeal.

Affirmed; cross-appeal moot.

PITTMAN, HART, and ROBBINS, JJ., agree.

GLADWIN and GRUBER, JJ., dissent.

ROBERT J. GLADWIN, Judge, dissenting.

I believe that the trial court erred in granting a new trial; therefore, I respectfully dissent.

The majority opinion adequately sets out the facts and the appropriate standard of review. Further, the majority is correct in holding that to the extent that the trial court considered parts of the juror affidavits that referred to the internal deliberations of the jury or matters not relating to extraneous information or outside influence was error. The allegations of "an atmosphere of intimidation," "continuous interruptions," and "loud outbursts" are clearly matters that the trial court could not properly consider. The only issue that the trial court could consider is whether the alleged misconduct, juror McDaniel's visit to the intersection, is a sufficient basis to grant a new trial. It clearly is not.

Paragraph 4 of the two identical affidavits by the two jurors who dissented from the verdict states:

I attest that a fellow juror (McDaniel) made an independent investigation into the facts of the case in that he reported during the deliberations that he went to the scene of the accident during the lunch break. Juror McDaniel reported the results of his investigation and his opinions regarding the same to the other jurors during the deliberations. Juror McDaniel was a juror voting in favor of the defendant and I believe his actions contributed to the verdict being handed down in favor of the defendant along with jurors Wade and McPherson not permitting appropriate deliberations of the evidence presented during the trial.

In *B. & J. Byers Trucking, Inc. v. Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984), our supreme court held that the jury foreman's opinion regarding the accident scene and its effect on the other jurors were plainly inadmissible under Rule 606(b) in determining whether to grant a new trial. *Id.* at 447, 665 S.W.2d at 262. The juror in *Byers* had not been cautioned against visiting the scene. *Id.* at 448, 665 S.W.2d at 262. The supreme court held that the allegation regarding a visit to the accident scene did not qualify as extraneous information, as the scene was on a public highway and open to inspection by everyone, therefore not considered information from an outside source. *Id.* Ultimately, the supreme court affirmed the trial court's decision to deny a motion for a new trial based on juror misconduct.

In *Borden v. St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985), our supreme court affirmed the trial court's grant of a new trial. *Id.* *Borden* involved a truck-train collision, and a central issue in the case was whether the truck driver's view of the train was obstructed. *Id.* Included in the judge's instruction was an admonition not to make an independent inquiry or investigation of the case. *Id.* Contrary to these instructions, two jurors went to the scene of the accident, and at least one reported that the truck's view of the train would have been obstructed. *Id.*

The supreme court distinguished *Borden* from *Byers* stating:

The appellants next contend that this case must be reversed in accordance with *B. & J. Byers Trucking, Inc. v. Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984). The argument is without merit as that case is easily distinguishable from this one. Both cases involve motions for new trials and, as we have already pointed out, that is a matter over which the trial judge has great discretion. In *Byers* a new trial was denied. We affirmed. Here, one was granted. We affirm. In *Byers* one juror went on a public highway to the place where the accident had occurred. He may have already been familiar with the scene and he had received no instructions forbidding him to conduct a private investigation. We held that under those circumstances there was no possibility of prejudice. Here, one of the critical issues was whether the train whistle was sounded. From the affidavit of the bailiff, the trial judge could have found that juror Adkins may have been influenced by the external information that he gained on the day he visited the scene. That is, the train whistle was not blown until the train was 200 feet from the crossing. In addition, the affidavits of jurors Beeson and Crawford could have caused the trial judge to find that the external information possibly influenced the jurors on the issue of visibility. Here, there was a clear possibility of prejudice.

*Borden*, 287 Ark. at 321, 698 S.W.2d at 797–98. In the instant case, like *Byers*,

the juror was not warned not to visit the intersection, which was on Cherry Street, a main thoroughfare in Pine Bluff with which he was quite possibly already familiar. Further, the dynamics of the accident scene do not go to the central issue in this case. This case is clearly more in line with *Byers* than *Borden.*

Even if the visit to the scene was misconduct, we must next look to whether Hankins could have suffered any prejudice by it. A party moving for a new trial under Arkansas Rule of Civil Procedure 59(a)(2) must demonstrate that its rights have been materially affected by the misconduct by showing that a reasonable possibility of prejudice has resulted from the jury misconduct. *See Borden, supra.* Prejudice is not presumed, and the burden is on the moving party to show otherwise. *See St. Louis S.W. Ry. v. White,* 302 Ark. 193, 788 S.W.2d 483 (1990).

In *Diemer v. Dischler,* 313 Ark. 154, 852 S.W.2d 793 (1993), our supreme court set out the following factors to be used in determining whether juror misconduct warranted a new trial: (1) whether the trial court instructed the jury not to visit the site of an accident; (2) whether the juror offender simply voiced an opinion or engaged in an experiment relating to a crucial issue; (3) whether the offending juror's observations impugned a fact presented by a party; (4) whether the affiant describes the alleged juror ⌊₁₃misconduct with sufficient specificity, which would include identifying the names of the jurors who engaged in the acts complained of. Here, only the fourth factor is met, as juror McDaniel was named. The majority states that the jury was instructed prior to deliberations to determine the facts from the evidence produced at trial. This is different from being instructed to not visit the site of the accident. Further, there is no indication that any instruction of this nature was given prior to the trial court breaking for lunch, which is the time the affiant said juror McDaniel went to the scene of the accident.

However, these factors pale after viewing whether juror McDaniel offered an opinion or engaged in an experiment or impugned a fact offered by a party. A critical analysis of the alleged juror misconduct makes it clear that Hankins could not have suffered any prejudice. This was a simple intersection accident. The majority candidly admits there was a question of comparative negligence, specifically whether Campbell stopped at the stop sign or whether Hankins was speeding. There is no possible way that juror McDaniel could offer any information that would answer those questions. The affidavit fails to state any information that juror McDaniel gave that could have resulted in prejudice, and the majority opinion fails to provide even one example of an experiment or information that could have caused any prejudice. It simply concludes there was a reasonable possibility of prejudice.

The majority is correct in stating that it is difficult to reverse the grant of a new trial, but it is not unprecedented. See *Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v.* ⌊₁₄*Smith,* 5 Ark.App. 37, 632 S.W.2d 244 (1982). Simply because there is a high standard of review does not mean that we should rubber stamp every grant of a new trial. In this case, two jurors' opinions of a case have been allowed to prevail over the opinions of ten jurors based on nothing more than the two jurors' dissatisfaction with the verdict. As I would reverse the grant of a new trial, I would also affirm Hankins's cross-appeal as the jury's verdict was supported by substantial evidence.

GRUBER, J., joins.