2011 Ark. App. 220

**Ben WILLIAMS and Ben Williams, Jr., Family Partnership, Appellants**

v.

**LIBERTY BANK of Arkansas, Appellee.**

No. CA 10–57.

Court of Appeals of Arkansas.

March 16, 2011.

Rehearing Denied April 20, 2011.

---

tions found in Ark.Code Ann. § 4–9–203(c)–    (i), but they are inapplicable here.

Scott Manatt, Pocahontas, Robert W. Henry, Conway, for appellant.

Jeffrey W. Puryear, Jonesboro, Robert F. Thompson III, and Serena Thompson Green, Paragould, for appellee.

CLIFF HOOFMAN, Judge.

This is the second time that this case has been before this court. The dispute is between a landlord and a bank, Liberty Bank of Arkansas (the successor to Peoples Bank of Paragould), over the proceeds of crops planted by a debtor farmer. The farmer, Don Mathis, operated several farming corporations and rented land from appellants Ben Williams and the Ben Williams, Jr., Family Partnership (referred to collectively as "Williams") in Clay County in 2001 and 2002. Because Mathis could not pay Williams all of the rent that he owed for 2001, they signed a handwritten agreement on December 18, 2001, providing that Mathis would assign the 2002 crop as payment for money he owed Williams. On April 17, 2002, Williams filed a financing statement in Clay County to perfect his landlord's lien. The bank loaned Mathis production money and filed financing statements to perfect its security interests in crops grown by his farming corporations on April 15 and June 5, 2002. On September 19, 2002, Williams and Mathis entered into another lease agreement, in which Mathis agreed to pay rent on or before December 30, 2002, and Williams terminated the financing statement covering his security interest in Mathis's crops. Williams later contended that he released his lien because a bank loan officer, Jeff Shelton, had asked Mathis to ask Williams to do so and had promised that the bank would cover Mathis's rent payments to Williams due in December; Shelton, however, denied making any such promise, and the bank refused to honor Mathis's rent checks. In our opinion in *Williams v. Peoples Bank of Paragould*, CA06–25, slip op. at 2–4, 2006 WL 3690738 (Ark.App. Nov. 29, 2006) (unpublished), we set forth the factual and procedural history of the ensuing dispute:

Appellant harvested the wheat in June 2003 and delivered it to appellee Consolidated Grain and Barge Company (CGB). Before CGB paid for the wheat, it learned of the bank's claim to the proceeds of the 2003 wheat crop and did not pay appellant the crop proceeds.

The bank filed this suit on July 7, 2003, against Mathis's farms for payment of the amounts due on fourteen promissory notes, asserting that it had a security interest in Mathis's crops and in the proceeds of the sale of the crops. The bank amended its complaint to add CGB, appellant, and others involved in the 2003 wheat harvest as defendants. On November 17, 2003, appellant filed a counterclaim against the bank and two of its officers and a cross-complaint against CGB. Appellant alleged that Mathis had not paid rent on his farms for one-half of 2001 or for all of 2002; that CGB had breached its contract with him; that the bank had intentionally interfered with his contract with CGB; that CGB and the bank had conspired to avoid paying him for the crops, resulting in the conversion of his property; and that the bank and CGB had committed abuse of process in obtaining an ex parte temporary restraining order preventing CGB from paying appellant. In response, the bank raised several affirmative defenses, including the statute of limitations. CGB responded that appellant had failed to state a claim for relief.

The bank filed a motion to dismiss on December 2, 2003. On March 22, 2004, CGB moved for summary judgment. Appellant amended his counterclaim on April 29, 2004, adding a claim for fraud. The bank raised several affirmative defenses, renewed its motion to dismiss, and moved for partial summary judgment against the Mathis farming corporations. There was a hearing on July 1, 2004, at which the circuit judge asked the parties to brief the issue of lien priority in the crop proceeds and to address whether the description of the collateral on the security agreements and financing statements signed by Mathis were sufficient. Appellant argued that Mathis had no power to transfer rights in the 2003 crop, because the lease had ended on December 31, 2002, when the rent was not paid.

The circuit court granted CGB summary judgment on appellant's conspiracy and abuse-of-process claims on August 9, 2004. On September 16, 2004, the court granted partial summary judgment to the bank on appellant's claims for tortious interference with contract, conversion, conspiracy, and abuse of process and denied summary judgment as to his fraud claim. The court further granted judgment to the bank on the loans to Mathis's farming corporations.

The court entered a second order for partial summary judgment on November 1, 2004. The court stated that the parties had settled their dispute as to $8,566.18 of the proceeds totaling $37,267.09 from the June 2003 sale of wheat to CGB. The circuit court held that the bank had a valid perfected security interest in the wheat crop sold to CGB in June 2003; that the bank's security interest was properly described, and that it attached to the wheat when it was planted; that the bank's security interest was superior to the lien asserted by appellant; and that the bank was entitled to the remaining $28,700.91 from CGB. The court gave appellant thirty days within which to file an amended counterclaim. Appellant filed an amended counterclaim on November 29, 2004, alleging that Mathis was a holdover tenant, paying no rent, until June 2003. He requested unlawful detainer and quantum meruit damages. The bank renewed its motion for summary judgment on appellant's fraud claim on January 7, 2005.

On March 10, 2005, the circuit court certified all prior orders granting summary judgment under Ark. R. Civ. P. 54(b), leaving appellant's breach-of-contract, fraud, and quantum meruit claims to be addressed later. Appellant filed a notice of appeal from that order. On March 29, 2005, the court granted summary judgment to CGB on appellant's conversion claim.

On appeal, we reversed the entry of summary judgment because questions of fact remained unanswered regarding the adequacy of the description of the collateral pledged by Mathis, and consequently, whether the bank's security interest attached or was perfected.

After our decision reversing the summary judgment, the case went to trial. Over Williams's objection, the circuit court permitted the bank to introduce into evidence a plat of real property in Clay County (which revealed Williams's extensive real property holdings) and evidence of his longstanding, close business relationship with Mathis. Williams, Shelton, Mathis, and Richard Maxwell (with Consolidated Grain and Barge Company (CGB)), testified. The trial court directed verdicts in favor of the bank on Williams's claims for the 2001 crop rent, obtaining a signature by deception, tortious interference with contractual relations, conspiracy, abuse of

process, intrusion, forfeiture, and conversion. The trial court sent Williams's fraud claim (for $172,935.81 in unpaid rent checks) and the issue of whether the bank had a perfected security interest in the crop proceeds to the jury. It refused to give Williams's proffered instruction about the bank's security interest in the crop proceeds because that instruction erroneously stated that a financing statement must contain a description of the real property on which the crops were grown. The jury (1) found that the bank had a perfected security interest in the 2003 crop proceeds; (2) awarded the $28,700.91 in 2003 crop proceeds held in the registry of the court to Williams; and (3) found that the bank had not committed fraud.[1] The court denied Williams's motions for judgment notwithstanding the verdict and new trial because of alleged juror misconduct. Williams then pursued this appeal.

## I. Fraud

▆ Williams first argues that the jury's finding that the bank did not commit fraud is not supported by substantial evidence. He acknowledges that the evidence on this issue was conflicting but argues that no reasonable person could believe that he would release his lien without a concomitant promise that he would receive what was due to him. Where the sufficiency of the evidence to support a jury verdict is the issue on appeal, the standard of review is whether the verdict is supported by substantial evidence. *Mitchell v. Fells*, 2010 Ark. App. 663, 376 S.W.3d 543. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* The elements of fraud are (1) a false representation of a

material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Wochos v. Woolverton*, 2010 Ark. App. 802, 378 S.W.3d 280. The question is one of fact when the evidence as to fraud is in conflict. *Id.*

▆ Williams did not allege that Shelton promised *him* that the bank would honor Mathis's rent checks but instead based his claim upon *Mathis's* statements that Shelton asked Mathis to secure Williams's release of the financing statement in exchange for that promise. Shelton, however, testified that he never discussed Williams's lien with Mathis and that he did not speak with Mathis about the rent due to Williams until December 30, 2002 (three months after Williams had released the lien). The jury obviously believed Shelton's version of events, which was substantial evidence to support the verdict. A jury has the right to believe or disbelieve all or any part of the testimony at trial, even when the testimony is uncontradicted, and is in a superior position to judge the credibility of the witnesses. *Sealing Devices, Inc. v. McKinney*, 2009 Ark. App. 412, 321 S.W.3d 270. We therefore affirm on this point.

## II. Validity of the Bank's Security Interest Based on the Sufficiency of the Collateral Description

▆ Williams also argues that the trial court erred in denying his motion for directed verdict on the question of whether the bank had a valid, perfected security interest in the crops and their proceeds

1. The circuit court directed verdicts in favor of CGB, from which Williams has not appealed.

and that the jury's finding that the description of the collateral was sufficient was not supported by substantial evidence. Williams contends that the financing statements provided no possible way to determine which lands Mathis was farming that might be covered by the security agreement. He asserts that the descriptions were vague, did not contain a description of the land, and did not provide a third party with any means of identifying which tracts of land owned by him were subject to the bank's liens. Williams also argues that the trial court erred in refusing to give his proffered jury instruction about the description of the collateral in the financing statements.

The bank responds that Williams's argument is moot because he was made whole when the jury awarded him the proceeds from the sale of the 2003 wheat crop, $28,700.91, which, it asserts, was the full measure of damages he could have received if the jury had found the bank had no lien. The bank states that Williams never alleged that he was entitled to any damages other than this amount in crop proceeds based on the lien-priority issue, and he has, therefore, received all damages that he claimed on that issue. We agree that these issues are moot for two reasons. First, Williams has received the proceeds of the 2003 wheat crop. Second, even if he had claimed the 2002 proceeds on a lien-priority basis, his termination of his financing statement left him with no perfected security interest in the 2002 crops. *See Pruitt v. Dickerson Excavation, Inc.,* 2010 Ark. App. 849, 379 S.W.3d 766. To the extent that Williams might have had a landlord's lien (without regard to the UCC) on the 2002 crops, it had expired by the time he filed his counterclaim in November 2003. *See* Ark.Code Ann. § 18–41–101 (1987).[2]

### III. *Juror Misconduct*

██ Williams further argues that the trial court erred in refusing to grant him a new trial because of juror misconduct. Arkansas Rule of Civil Procedure 59(a) (2010) provides that a court may grant a new trial for any of several enumerated grounds materially affecting the substantial rights of a party, including: (1) any irregularity in the proceedings by which the party was prevented from having a fair trial and (2) misconduct of the jury. A party moving for a new trial under Rule 59(a)(2) must demonstrate that his rights have been materially affected by the misconduct by showing that a reasonable possibility of prejudice has resulted from the juror misconduct. *Campbell v. Hankins,* 2009 Ark. App. 479, 324 S.W.3d 358. While prejudice is not presumed, neither is there a requirement that the moving party show actual prejudice. *Id.* Once a juror has contaminated the jury's deliberations with extrinsic evidence, a new trial will be warranted if there is a reasonable possibility of resulting prejudice. *Id.* To require the losing party to prove actual prejudice would place an impossible burden upon him. *Id.* The trial court's discretion to grant a new trial under Rule 59 is necessarily broad and will not be overturned on appeal in the absence of an abuse of discretion. *Payne v. Donaldson,* 2010 Ark. App. 255, 379 S.W.3d 22. Given the standard of review, the trial court's determination to grant or deny a motion for new trial is almost never overturned on appeal. *Campbell v. Hankins, supra.*

██ Arkansas Rule of Evidence 606(b) (2010) precludes inquiry into "any matter

---

**2.** Ark.Code Ann. § 18–41–101 provides for a six-month crop lien in favor of a landlord for rent.

or statement occurring during the course of the jury's deliberations or to the effect of anything upon [the juror's] or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict[.]" That rule states that a juror "may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." The purpose of the rule is to balance the freedom of secret jury deliberations with the ability to correct an irregularity in those deliberations. *D.B. & J. Holden Farms Ltd. P'ship v. Arkansas State Highway Comm'n*, 93 Ark.App. 202, 218 S.W.3d 355 (2005).

Williams relied on the affidavit of juror Mark Locke in asserting that the jurors had engaged in misconduct by bringing extraneous information about Mathis's financial history into deliberations. Locke stated:

I'am [sic] Mark Locke, I sat on the jury at Corning Arkansas court house the week ending 10-9-09.

In regards to Ben Williams and Don Mathis, excuse my spelling or typing. But as I sat in the jury room with 12 jurors, making a decision, Kaleb McMasters and Scott Cato and Darlene Thomson had comments to make about things not evolved [sic] with the case.

McMaster stated while at work at Clay County Electric, had got on the commuter and looked up things pertaining to Don Mathis from his account at the coop and felt that Don Mathis did not deserve the money he was seeking, then Darlene Thomson stated while she worked at 1st National bank had looked at Don Mathis account, and said this is what happens to people with money, then Scott Cato stated he had a race car and the Mathis had a race car, but how the Mathis car was

all fixed up and his was not, stating how they did not deserve the money either. I stayed closed mouth and thought I should report this to the proper person, which I have now.

This is what I was told to do, I have felt that I have done the correct thing. I'am [sic] just being honest!

The bank responded by filing the affidavits of jurors Velma Thompson and Scott Cato. Thompson stated that, although she had retired from First National Bank five years previously and had knowledge that Mathis had written bad checks, she had not mentioned this to other jurors; she did not recall other jurors making the statements about Mathis; and she was relieved when the court read the jury instruction about not having to set aside her common knowledge. Cato said that he did not recall any discussion of independent information during deliberations and that he did not recall any juror stating that he or she had looked up information about witnesses during the trial. Even if we found that such extraneous information was impermissibly considered, in light of the extensive evidence of Mathis's bankruptcy and debt problems that was introduced at trial, Williams did not demonstrate that a reasonable possibility of prejudice to him had resulted from such extraneous information and personal opinions. The trial court did not, therefore, abuse its discretion in denying the motion for new trial.

## IV. *Tortious Interference with Contractual Relations and Conversion*

Williams argues that the trial court erred in granting the bank's motion for directed verdict on his claims for tortious interference with contractual relations and conversion of all of the crop proceeds, including the 2002 payments received by the bank. Williams pled to the

trial court that the bank had converted the 2003 wheat crop proceeds and had interfered with his contract with CGB. On appeal, he argues something different: that the bank interfered with his contract with Mathis and that it converted the rent money that Mathis owed him. It is a basic rule of appellate procedure that a party cannot change arguments on appeal, and we do not address arguments that were not raised below. *Taylor v. Producers Rice Mill, Inc.*, 89 Ark.App. 327, 330, 202 S.W.3d 565, 567 (2005).

### V. *Evidence of Alleged Debt*

■ Williams also argues that the trial court erred in granting the bank's motion in limine before trial to exclude evidence of the debt from the 2001 crop year that Mathis owed him. He states that the December 2001 agreement into which he and Mathis had entered granted him a lien in the 2002 crop as security for the crop rent still due from the 2001 season; that it was an acknowledgment that the 2001 farm lease had ended; that the subsequent agreement reached in 2002 did not cancel the crop rental still due for 2001; and that the amount of money owed to him for 2001 crop rentals was an account stated and not subject to dispute. |₁₁Williams further argues that the trial court's ruling that the bank's transactions with Mathis before 2002 and after 2003 were relevant was inconsistent with its ruling that the transactions between him and Mathis during these years were not relevant. As a result, Williams states, the jury was not provided with a full picture of what had transpired.

■ We will not reverse the trial court's decision to admit or refuse evidence in the absence of an abuse of that discretion and a showing of prejudice. *Graftenreed v. Seabaugh*, 100 Ark.App. 364, 268 S.W.3d 905 (2007). Arkansas Rule of Evidence 401 (2010) defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The December 2001 handwritten document did not specifically refer to a 2002 deficiency, but referred to a "deficiency payment on the 2002 crop." In any event, Williams did not file this document, so any lien that it might have given him was not perfected. When Williams validly terminated his financing statement in September 2002, his security interest in the 2002 crops terminated. We also note that his September 2002 farm lease with Mathis had a merger clause covering prior agreements, and that any 2001 landlord's lien of Williams's would have expired by June 30, 2002. *See* Ark.Code Ann. § 18–41–101. The December 2001 document, as well as Williams's transactions with Mathis before 2002 and after 2003, were, therefore, no longer relevant to the issues sent to the jury. We affirm on this point.

### |₁₂VI. *Admission of Clay County Plat Book*

■ Williams contends that the trial court erred in admitting into evidence a 1997 Clay County Plat Book, prepared from tax and other public records, containing plats, by section, township, and range, over his objection that it was inadmissible hearsay. Williams states that the book, which was sponsored by the Clay County Conservation District, was not a governmental publication admissible as an exception to the hearsay rule under Arkansas Rule of Evidence 803(8) (2010), but was simply a commercial publication sold to the general public by Miller Management Services, Inc. The bank, however, relied on Rule 803(17), which provides that "published compilations, generally used and relied

upon by the public or by persons in particular occupations" are exceptions to the hearsay rule. Shelton testified that he regularly relied on this book in his work as a loan officer. We hold that the book was admissible under this rule and that the trial court did not abuse its discretion in admitting it.

## VII. *Evidence of Williams's Wealth*

In his last point, Williams argues that the trial court erred in permitting the bank to introduce evidence of his wealth because it was not relevant and, if it was relevant, its probative value was outweighed by the danger of unfair prejudice. He states that the only possible purpose for admitting this evidence was to cause the jurors to believe that he was a "rich old man seeking more money from the bank." Even though evidence may be relevant pursuant to Rule 401, it may be excludable under Arkansas Rule of Evidence 403 (2010), which provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice, and its decision will not be reversed absent a manifest abuse of that discretion. *Graftenreed, supra.* The mere fact that evidence is prejudicial to a party does not make it inadmissible; it is only excludable if the danger of *unfair* prejudice substantially outweighs its probative value. *Id.* The prejudice referred to in Rule 403 denotes the effect of the evidence upon the jury, not the party opposed to it. *Id.*

The bank did not introduce evidence of Williams's wealth—it offered evidence of his financial transactions with Mathis, which was relevant and not unfairly prejudicial to Williams. Additionally, Williams's business relationship with Mathis was relevant to their credibility, especially as to Williams's fraud claim. Williams purchased Mathis's farmland for over $2 million in Mathis's bankruptcy proceeding, leased it back to Mathis, and then sold it for a large profit, which Williams gave as an explanation for why he had not pursued this money from Mathis. The trial court did not abuse its discretion in admitting this evidence.

Affirmed.

GLOVER and ABRAMSON, JJ., agree.