T. R. ELLIS *v.* William Scott FEEMSTER

85-6                                                    687 S.W.2d 835

Supreme Court of Arkansas
Opinion delivered April 15, 1985

*Kathryn E. Laws,* for appellant.

*Peter R. Darling,* for appellee.

DARRELL HICKMAN, Justice. This is a conversion suit. William Scott Feemster, a farmer from Howard County, sued T. R. Ellis, a Muskogee, Oklahoma, resident, for stealing 800 gallons of diesel fuel from his farm fuel tanks which are located south of Nashville, Arkansas.[1] All the evidence was circumstantial; Ellis chose to put on no evidence. The trial judge, sitting as a jury, found that agents of Ellis had intentionally converted the 800 gallons of fuel and entered judgment for Feemster for the cost of the fuel and trebled damages for punishment. The only real issue on

---

[1] This suit arose when T. R. Ellis and Sheriff Dick Wakefield for return of his pickup which was impounded after the conversion. Feemster intervened and cross-complained against Ellis for conversion. Upon agreement of the parties, Wakefield was dismissed as a party and the truck was released to Ellis in exchange for a replevin bond.

appeal is the sufficiency of the evidence, and we agree with the trial court that Feemster made a sufficient case.

The circumstances of the case are unusual. About 10 p.m. on the evening of April 9, 1980, Feemster and a companion were passing one of Feemster's fields, where he had a fuel storage tank, when they noticed a pickup truck backed up to his fuel tank. They saw someone, perhaps two people, flee as they approached. They got out and found a 1979 GMC truck with the motor running. It was equipped with two fuel tanks, one rectangular and the other a saddle type tank like those used on semi-trailer trucks, various valves and hoses connecting the tanks, and an electric pump. A fuel line was running from one of the tanks into Feemster's tank. A camper shell covered the equipment. Feemster turned the truck motor off, got the license number and called the sheriff.

The sheriff put out an alert in the neighborhood about the incident, but Feemster was unable to provide any substantial description of the person or persons who fled. The sheriff impounded the truck, ran a check on the vehicle, and found it to be registered to T. R. Ellis of Muskogee, Oklahoma. He also found an invoice in the vehicle issued to T. R. Ellis of Muskogee, Oklahoma. An Arkansas road map, marked in three places, was in the pickup. An area was circled which included the storage tanks of Feemster. Two other places were marked which turned out to be road intersections where large farming operations were conducted and where fuel storage tanks were located. The sheriff, a farmer himself, said he had never seen a farm truck with such equipment before. He said that ordinarily a farm truck in that locality had to have lug tires, not smooth tires, which this one had.

The sheriff testified that he checked and did not find that such a vehicle had been reported stolen. Ellis called him within a few days asking whether the sheriff had his pickup truck. The sheriff said he did have it, and he could come get it. In fact, he asked Ellis to come get it, but Ellis never came. Ellis told the sheriff that Frank Fields, an employee of Ellis, had reported the truck stolen at Texarkana from a truck stop

on April 9. Fields drove for Ellis, who had several trucks used for hauling grain. The sheriff told Ellis he would like to talk to Fields, but Ellis said he did not know where he was. The sheriff called the Texarkana police and obtained a report made by one Frank Fields at 1:25 p.m. on the afternoon of April 9 that a GMC pickup had been stolen from a truck stop. Fields had reported that the pickup was left at the truck stop two days earlier with the keys in the ashtray. When he returned, it was gone.

Close in time to the incident, Joe Harding, a resident of Nashville, picked up a hitchhiker, who said he had been fishing. However, it was peculiar to Harding that he had scratches all over him. The man said he was going to Oklahoma. The sheriff testified that the description of this man matched the description of Frank Fields who had reported the vehicle stolen in Texarkana.

The judge specifically found that he did not believe the report of the stolen vehicle to be true. Further, he found that the pickup truck was specially rigged to convert fuel. Both findings of fact were conclusions which the judge could have made from the evidence presented.

After Feemster presented his proof, Ellis moved to dismiss. He argues that a verdict should have been directed in his favor at that point. On appeal from a denial of such a motion, we look at the evidence in the light most favorable to the non-moving party, and, if there is any substantial evidence, a question of fact was presented and the motion should have been denied. *Nichols* v. *International Paper Co.*, 278 Ark. 226, 644 S.W.2d 583 (1983). We find that there was sufficient evidence to present a question for the trier of fact of whether Ellis' agent had converted the fuel.

Once the judge concluded that the vehicle was indeed being used to convert fuel (it is undisputed that the pickup belonged to Ellis), and that Fields worked for Ellis, then the only missing link was whether Fields or an agent of Ellis used the vehicle that night. The judge chose not to believe Fields' report to the police that the truck had been stolen. In view of all the circumstances of the case, we cannot say that

the judge was wrong to draw the conclusion. Therefore, he could have believed that Fields had possession of the truck on April 9 and converted the fuel.

Ellis also argues that even if there was sufficient evidence that his agent stole the fuel, there was insufficient evidence that the agent was acting within the scope of his agency. Once the trial court determined that Ellis or his agent was responsible for the theft, it would only take a small step to find that in view of the truck's equipment the agent was acting at Ellis' direction.

It is argued that the finding that 800 gallons of fuel were stolen is error because that amount is beyond the capacity of the two tanks in the back of the pickup. The sheriff did testify that Feemster could not be sure of the capacity of the tanks. Feemster's testimony was unrefuted, however, that he had filled the tank with 1000 gallons only a few weeks before, had used none, and that when he measured the tanks, he only found 200 gallons left. Once the judge determined the pickup's mission, demonstrated by the roadmap and the equipment, he could have easily concluded that the missing fuel was taken by Ellis' agent, perhaps in two different trips.

When a judge sits without a jury, we will not reverse his findings unless they are clearly erroneous. ARCP Rule 52. We find no such error.

Affirmed.