Troy MITCHELL *v.* FIRST NATIONAL BANK IN
STUTTGART

87-211                                        739 S.W.2d 682

Supreme Court of Arkansas
Opinion delivered November 23, 1987

*Daggett, Van Dover, Donovan & Cahoon*, by: *Jimason J. Daggett*, for appellant.

*Dennis R. Maloch*, for appellee.

DARRELL HICKMAN, Justice. First National Bank of Stuttgart loaned $25,000 to Ralph Mitchell as an accommodation to one of its regular customers, Troy Mitchell. Troy, who is Ralph's brother, signed an agreement guaranteeing repayment of the loan. Troy did not want his brother to know he had guaranteed repayment of the loan. The loan was also to be secured by a mortgage on land Ralph owned in Texas. Troy had a prior lien on the Texas land, taken when the brothers dissolved their joint farming operation. When Ralph defaulted on the loan, the bank sued Troy for the outstanding balance of $7,981.04. It was stipulated that the mortgage had never been recorded. Troy denied the obligation, and the bank applied funds held in a certificate of deposit, which was in Troy and his grandson's name, to setoff the balance of the loan. Since the debt was satisfied, the bank dismissed its lawsuit. Troy demanded that the bank return the funds within five days or he would bring suit against the bank for wrongfully converting the certificate. When the bank learned it did not have a signature card authorizing the right of setoff, the funds were restored. The lawsuit was refiled against Troy. Troy and his grandson counterclaimed for conversion of the certificate.

The case was submitted to a jury, which returned a verdict for the bank in the amount of $2,500 on the guaranty agreement and awarded Troy and his grandson $62.06 in compensatory damages on their conversion claim. The $62.06 was the amount of interest the bank failed to tender when the certificate was restored.

Troy makes three arguments on appeal. First, he argues that the trial judge erred in failing to direct a verdict for the appellant on the guaranty agreement. He argues that the guaranty agreement should have been rescinded because it was undisputed that a mutual mistake existed at the time the agreement was signed.

A mutual mistake is a mistake common to both parties. Before a mutual mistake will affect the binding force of a contract, the mistake must be of an existing or past material fact which is the basis of the contract. See 17 Am. Jur. 2d *Contracts* § 143 (1964). A contract may be rescinded for a mutual mistake of a material fact. *Carter* v. *Matthews*, 288 Ark. 37, 701 S.W.2d 374 (1986). An example of a mutual mistake is *First National Bank of Wynne* v. *Coffin*, 184 Ark. 396, 42 S.W.2d 402 (1931). Farm property was purchased, but neither the buyer nor seller knew the land had been platted and subdivided with streets dedicated to the city. Both parties were also mistaken as to the exact acreage of the farm; both thought it was larger than it actually was.

At trial, Troy seemed to argue that the mutual mistake the parties were operating under was that the mortgage was recorded prior to his signing the guaranty agreement and that he was thus protected. In his opening statement, the appellant's attorney stated:

> I think the bank would never have asked Troy Mitchell to execute this guaranty agreement had they known the mortgage was not on record. And I don't think anything about it I know that Troy Mitchell never would have executed it had he known that the mortgage was [not] on record.

In his closing argument, he told the jury that:

> If as a matter of fact Troy Mitchell was induced . . . led to . . . execute that guaranty agreement with an understanding that the note had been secured then you are told in such event that your verdict should be for Troy Mitchell and against the First National Bank on the note.

In addition, the testimony of Troy Mitchell and Mr. Neukam, the loan officer, confirms that this was the appellant's argument at trial. Troy was asked the following question:

> Q.  In the absence of the assurance that was given you by the loan officer and your own belief that the documents were recorded . . . that a lien was properly created irrespective of recording would you have signed this document?

> A. Oh, if I had any idea that it wasn't, ah, bankable where I was protected, no, sir, I would not have signed it. Because that was my request to see that I was protected and . . . and I would not have signed had I not thought I was protected with, ah, ah, the documents in proper order.

Finally, Mr. Neukam testified that when Troy came to his office to sign the guaranty agreement, he (Mr. Neukam) told Troy that everything he asked for had been done. Specifically, he testified:

> Q. You believed the note had been properly drawn?
>
> A. Yes, sir.
>
> Q. And the mortgage had been properly drawn?
>
> A. Yes, sir.
>
> Q. And recorded?
>
> A. To my knowledge.
>
> Q. But that was your . . .
>
> A. That was my understanding.
>
> Q. My understanding. Did you . . . was that Troy's understanding.
>
> A. Yes, sir.

Based on the above testimony and arguments made by the appellant's attorney at trial, appellant was clearly arguing that the mutual mistake was the assumption that the mortgage was recorded at the time he signed the guaranty agreement.

However, the appellant has subtly altered his argument on appeal. In his brief he contends:

> It is thus established that both the bank and the guarantor, prior to the execution of the Guaranty Agreement, had a mutual understanding and agreement that a lien would be created to secure the payment of the note and thus protect the guarantor in the event of default, giving him collateral from which to recoup his own payment if he be required to make it.

While this has only slightly altered the character of the mutual mistake alleged by the appellant at trial, it is definitely a different argument from that raised below. Below, the mutual mistake was the assumption that the mortgage was recorded at the time the agreement was signed; now the appellant contends that the assumption was that the mortgage would be recorded at some point. This argument is both broader than the one made below and more tailored to the bank's understanding of the procedure followed in obtaining a loan. However, the fact remains that this is not the same argument made below and, consequently, we are not bound to consider it. *See Novak* v. *State,* 287 Ark. 271, 698 S.W.2d 499 (1985).

The bank objected to all the testimony about what was intended regarding the mortgage, arguing that the appellant was trying to alter the written guaranty agreement by oral testimony, which cannot be done. The appellant said he was attempting to show a "mutual mistake" of fact, not change the agreement. The result is the same; if the appellant's testimony is accepted, it would alter the written instrument.

■■ Even so, the question to us is: was the trial judge wrong in refusing to direct the verdict for the appellant because there was a "mutual mistake?" On appeal, all evidence is considered in a light most favorable to the appellee. *Sipes* v. *Munro,* 287 Ark. 244, 697 S.W.2d 905 (1985). In considering whether the trial judge erred in refusing to direct the verdict, we examine the evidence in a light most favorable to the non-moving party (the bank in this case), and, if there is any substantial evidence to support the non-moving party, a question of fact was presented and the motion should have been denied. *Ellis* v. *Feemster,* 285 Ark. 385, 687 S.W.2d 835 (1985). In this case, there was substantial evidence to support the bank's position that the mistake was not "mutual." On cross-examination Mr. Neukam testified:

Q. When normally do you record a mortgage?

A. As soon as the money's disbursed.

A. All right. And the money was disbursed after the guaranty signed, right?

A. Right. . . .

Q. And so you couldn't have told him or indicated to him then or wouldn't have on the date of the signing of the Guaranty Agreement that the mortgage had been recorded already you wouldn't have recorded it. You wouldn't have until after the money was disbursed, right?

A. That is correct.

Q. So your understanding with Mr. Mitchell was that he would sign the agreement . . . the Guaranty Agreement when you had the note and mortgage signed by Ralph Mitchell.

A. Right.

Based on this testimony, we cannot say as a matter of law that this case involved a mutual mistake that would allow rescission of the guaranty agreement.

Therefore, the trial judge was correct in refusing to grant the motion for directed verdict.

■ Appellant's second argument is that there was no evidence to support the verdict of $2,500. He points out that after the case was submitted to the jury, the jury returned and asked the court the following question:

If we feel both parties are at fault, it is possible to divide the settlement of $7,900 . . . between both Mr. Mitchell and First National?

Based on this question, the appellant argues that the jury rendered a "split" verdict. We had the same issue in *Pate* v. *Hook*, 262 Ark. 411, 557 S.W.2d 391 (1977), and *Fulbright* v. *Phipps*, 176 Ark. 256, 3 S.W.2d 49 (1925). If a compromise award is supported by substantial evidence, we cannot increase or decrease it although the evidence would tend to support an award of the full amount owed or nothing at all. The judge rightfully refused to further instruct the jury. There was substantial evidence to support an award for $7,981.04; therefore, the appellant should not complain about a judgment for $2,500.

■ Finally, it is argued that the court erred in failing to submit the issue of punitive damages to the jury on the conversion

issue. The instruction refused is not abstracted; therefore, we do not address this question. *Strickland* v. *Quality Bldg. & Security Co.*, 220 Ark. 708, 249 S.W.2d 557 (1952). *See also Ford Motor Credit Co.* v. *Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979) (regarding the wrongful use of AMI 2217).

Affirmed.