

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-946

| | |
|---|---|
| SHERRY ANN MIESNER<br>APPELLANT<br><br>V.<br><br>ESTATE OF JOYCE EDNA PRIEST ALLRED, DECEASED, RELYANCE BANK, BELINDA DIANE ALLRED, AND JANET HERRING<br>APPELLEES | **Opinion Delivered** June 21, 2017<br><br>APPEAL FROM THE CLEVELAND COUNTY CIRCUIT COURT [NO. 13PR-15-16]<br><br>HONORABLE HAMILTON H. SINGLETON, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Judge**

Sherry Miesner appeals from a Cleveland County Circuit Court order that approved a family-settlement agreement, distributed assets, and awarded various costs and fees to Relyance Bank, as administrator of the Estate of Joyce Edna Priest Allred, deceased. On appeal, Miesner argues (1) that the petition for appointment of a personal representative was filed by a nonlawyer, so all the subsequent orders are null and void, and (2) the family-settlement agreement is unenforceable. We affirm the circuit court's decision.

I.

A detailed history of the case leading to this appeal is needed to understand it. Joyce Allred was married to Lewis Franklin Allred, Sr., and they had three children together—Sherry Miesner (appellant), Janet Herring, and Lewis Franklin Allred, Jr. Lewis Franklin Allred, Sr., passed away sometime before 2001. Joyce apparently executed a will in 2001.

In it, she named Janet to serve as personal representative, made some specific bequests to certain grandchildren and great-grandchildren, and left the residue of her estate to her three children equally. The record also contains a Joyce Allred Trust Agreement dated 13 July 2010. That trust is revocable, and Joyce is named as grantor and initial trustee. Her daughters are named as successor trustees. Schedules A, B, and C attached to the trust document describe real property in Arkansas. The document directs that certain distributions be made to the trust's beneficiaries on Joyce's death. Joyce's signature is notarized, acknowledged, and dated 13 July 2010. A quitclaim deed dated 13 July 2010 (but not filed until 14 August 2015) reflects that some real property was deeded to the revocable trust. Joyce also executed a durable power of attorney (effective 13 July 2010) appointing Janet Herring as her attorney in fact.

Moving forward chronologically, the record also contains a document titled "Allred Family Settlement Agreement" (Agreement) dated 29 March 2012. It is an agreement between Joyce, Sherry, Janet, and Lewis, Jr. The Agreement states, "[T]o avoid controversy between her children, [Joyce] believes that an independent limited guardian of her estate should be appointed to manage her financial affairs during her remaining lifetime." The Agreement referenced a civil-interpleader lawsuit filed in the Cleveland County Circuit Court regarding Joyce's accounts at Edward Jones Company and Simmons First National Bank.

The Agreement states, in part:

> In consideration of the cessation of the Interpleader Action and to avoid any further controversy regarding the management of the financial affairs of Joyce E. Allred during her remaining lifetime and after her death the parties agree as follows:

SLIP OPINION

(i) Upon execution of this Agreement by all parties and as expeditiously as possible, Joyce E. Allred will Petition the Cleveland County Circuit Court for the appointment of Pine Bluff National Bank, or other appropriate financial institution, as Limited Guardian for the purpose of managing her financial affairs and payment of all properly presented bills related to her care. Pine Bluff National Bank will take control and manage the financial affairs of Joyce E. Allred pursuant to this Limited Guardianship of her Estate. The Limited Guardian will have authority to review all transactions from June 1, 2010 forward and take any actions it deems appropriate with respect to any transactions, other than the advances addressed below in this Agreement.

(ii) At the death of Joyce E. Allred, and irrgardless [sic] of any Will, pay on death designations, joint ownership designations or beneficiary designations to the contrary, the remaining assets of Joyce E. Allred (other than the jewelry described in item (iii)), from all sources, including life insurance, annuities, bank accounts, brokerage accounts, *et. cet* . . . . , after payment of all valid claims and expenses of administration will be distributed as follows:

(A) The first $ 170,000.00[1] in cash or other assets will be distributed, divided equally to Lewis Franklin Allred, Jr., and Sherry Miesner to equalize advances already made to Janet Herring.

(B) The remaining assets (other than the jewelry described in item (iii)) will be distributed, divided equally, between Lewis Franklin Allred, Jr., Sherry Miesner and Janet Herring.

(iii) At the death of Joyce E. Allred, or if she elects, during her life, Joyce E. Allred's jewelry will be divided equally between Sherry Miesner and Janet Herring

. . . .

All parties agree that, after the settlement is executed, this Agreement is a complete settlement between the parties regarding the financial affairs of Joyce E. Allred during her remaining life and after her death and that no legal proceedings of any kind may be instituted by any one or more of them against the other for actions related, in any way, to the administration of the financial affairs of Joyce E. Allred during her life and after her death or any transfers of property between the parties as contemplated in this Agreement.

---

[1]The typewritten number is $56,666.66, but it is crossed out and the handwritten number $170,000, with four sets of initials next to it, appears too.

. . . .

> (b) The terms of this Agreement will bind and benefit the parties and their successors in interest.

The Agreement is signed by Joyce E. Allred, Belinda D. Allred as "Attorney-In-Fact For Lewis Franklin Allred, Jr.," Sherry Miesner, and Janet Herring.

In June 2012—about two months after the Agreement had been executed—Lewis, Jr., died. More than two years later, in December 2014, his mother Joyce died.

## II.

On 10 July 2015, Relyance Bank filed a petition for appointment of a personal representative in the probate division of the Cleveland County Circuit Court. The petition states that Joyce died intestate around 21 December 2014 and that the bank's "interest in the estate is that of Guardian of the Estate of Joyce Edna Priest Allred, now deceased." The petition names Miesner and Janet as Joyce's surviving heirs at law and lists their addresses as "unknown." It also states that Joyce's estate contains no real property and more than $25,000 of personal property. Relyance asked the court to waive any bond requirement and to appoint it to administer the estate. The petition is signed by Richard Metcalf, EVP, for Relyance Bank. His signature is notarized. No attorney signature appears on the document.

On 23 July 2015, the circuit court appointed Relyance as administrator of Joyce's estate, finding that she had died intestate and that the petition was unopposed. In August 2015, the *Cleveland County Herald* published an advertisement notifying the public that any claims against Joyce's estate must be made within six months and sent to Relyance Bank

SLIP OPINION

c/o Owens Law Firm. In January 2016, Belinda Allred (Lewis, Jr.'s widow) filed a claim for $85,000 and for one-third of the estate's assets. She attached the Agreement to her claim. Relyance objected to Belinda's claim. The objection is signed by C. Thompson Owens as attorney for Relyance Bank.

In February 2016, Relyance filed a petition to approve the Agreement and asked the court to ratify it. It asked for an administrative fee of $15,000 and an attorney's fee of $8,788.76 to be paid before any other claims or distributions. The circuit court was asked to distribute the remaining assets of the estate "pursuant to the Agreement."

Next, Relyance asked the court to deny Belinda's claim against the estate. This new petition was signed by Richard Metcalf, as senior vice president and trust officer of Relyance Bank. Metcalf also signed a verification, and his signature was notarized. A certificate of service signed by attorney Tom Owens was attached to the February 2016 petition.

In March 2016, Miesner filed a pro se affidavit objecting to Belinda's receiving any money from the estate because she was "not privy" to the Agreement. She alleged that the "successors in interest" phrase in the Agreement was ambiguous and the Agreement was silent on what was to be done if "one kinship should predecease the testator or another kinsman." Attached to Miesner's objection was Joyce's 2001 will. Also attached were two attorney-correspondence letters from April and July 2015 proposing, and rejecting, a settlement offer from Miesner and Janet to Belinda. Miesner also objected to the administrative fee Relyance requested and asked the court to "remedy the situation at hand" regarding a $66,854.87 annuity from Protective Life Insurance Co. that had been deposited in her personal account because she was the named beneficiary of the policy. Miesner also

claimed that there was another annuity with Protective Life Insurance Co. to which she was not a named beneficiary and that Relyance had not deposited that annuity into the estate's account. Miesner attached documentation of the annuity and a letter from Protective Life Insurance Co. indicating that Miesner and Lewis, Jr., were the named beneficiaries.

In April 2016, Relyance asked the court to order Miesner to turn over to the estate any life-insurance proceeds she had received although Miesner was the designated beneficiary on the life-insurance contract. This petition was signed by Chris Cummings, vice president and trust officer for Relyance Bank. Tom Owens signed the certificate of service attached to the petition.

Days later, Relyance filed another response and asked the circuit court to dismiss Miesner's affidavits and claims against the estate and to award sanctions against her for "willful violation of the Allred Family Settlement Agreement." On 26 April 2016, Belinda moved to dismiss Miesner's claims and requested attorney's fees.

Miesner promptly responded that Lewis, Jr., had predeceased their mother and that any gift Joyce made had lapsed. She maintained that a will "transfers property at testator's death, not when executed." According to Miesner, her mother meant to leave property only to blood relatives, which did not include Belinda.

Various motions were filed about attorney's fees. The court held a hearing in June 2016 and entered a written order in July 2016 ratifying and approving the 2012 Agreement. It found that "all heirs" of Joyce Allred were parties to the Agreement and that the Agreement "survives the death of Joyce Edna Priest Allred and should be enforced." The court ordered Miesner to turn over the life-insurance proceeds she received to the estate

and that the estate should reimburse her for the taxes she paid as a result of cashing in the policy. The court also ordered that the "individual claim of Belinda Diane Allred and the claim of the Estate of Lewis Franklin Allred, deceased are denied at this time without prejudice based upon the ruling of the court that the Allred Family Settlement Agreement controls all of the assets of the estate." The court directed that the estate's assets be distributed exactly how Relyance had requested:

- $85,000 to Lewis Franklin Allred, Jr., Estate c/o Belinda Diane Allred, Administratrix

- $85,000 to Sherry Miesner

- 1/2 jewelry to Sherry Miesner

- 1/2 jewelry to Janet Herring

- 1/3 of remaining estate assets to Lewis Franklin Allred, Jr., Estate c/o Belinda Diane Allred, Administratrix

- 1/3 of remaining estate assets to Sherry Miesner

- 1/3 of remaining estate assets to Janet Herring

The court also found that Miesner had breached the terms and conditions of the Agreement by "filing frivolous pleadings in this matter" and ordered her to pay $1,500 from her "sole and separate share of the estate." It awarded Relyance $15,000 in administrative expenses and Tom Owens $8,788.76 in attorney's fees.

Miesner appeals the July 2016 written order. While the appeal was pending, she asked that the case be transferred to the Arkansas Supreme Court because Relyance Bank had engaged in the unauthorized practice of law when the original petition was filed by a nonlawyer, making it a nullity. The supreme court denied the motion in April 2017.

III.

Miesner argues that the initial petition appointing the bank as personal representative is void because it was not filed by an attorney. She also contends that all of the subsequent orders in this case are void as a matter of law. Miesner believes the bank lacks standing to serve as personal representative of Joyce's estate under the circumstances. In our view, she has raised an unauthorized-practice-of-law issue, not one of standing. Relyance Bank responds that it was not until this appeal began that Miesner raised the issue that the bank acted without an attorney. We must now decide whether an interested person in a probate proceeding may challenge—for the first time on appeal—the authority of a corporate officer to file a petition to have a personal representative appointed when the corporate officer has not been licensed or admitted to practice law. We hold that an interested party must first raise an unauthorized-practice-of-law challenge in the circuit court and obtain a ruling on it before we may review it.

By statute, "[u]nless otherwise provided, every application to the [probate] court, shall be by petition signed and verified by or on behalf of the petitioner." Ark. Code Ann. § 28-1-109(a) (Repl. 2012). A corporation, however, also must be represented by a licensed attorney to invoke the processes of the court or to appear before the court, because a corporation cannot practice law. *See All City Glass & Mirror, Inc. v. McGraw Hill Info. Sys. Co., Div. of McGraw Hill*, 295 Ark. 520, 750 S.W.2d 395 (1988); *see also Ark. Bar Ass'n v. Union Nat'l Bank of Little Rock*, 224 Ark. 48, 273 S.W.2d 408 (1954) (a corporate personal representative cannot act for itself even through an employee who is an attorney).

Our state constitution provides that the Arkansas Supreme Court has the authority to regulate the practice of law. Ark. Const. amend. XXVIII ("The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law."). *See also Rule of Court Creating a Comm'n on the Unauthorized Practice of Law*, 246 Ark. App'x 960 (1978) (per curiam). Our supreme court has said that the judiciary holds the exclusive authority to regulate the unauthorized practice of law, but the General Assembly is not precluded from creating a cause of action to stop the unauthorized practice of law by a nonlawyer. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21; *see also* Ark. Code Ann. § 16-22-211 (Supp. 2015).

An example of how our supreme court has handled an issue involving the unauthorized practice of law is *Davenport v. Lee*, 348 Ark. 148, 72 S.W.3d 85 (2002). There, two nonlawyer administrators of an estate filed a pro se complaint on behalf of an estate in a wrongful-death action. *Id.* The complaint was challenged, and the circuit court dismissed it with prejudice after determining that the nonlawyer administrators could not have filed a valid complaint. *Id.* The administrators appealed to this court; we ruled that the administrators were not authorized to file the complaint, but the "irregularity amounted to an amendable defect, not a nullity." *Id.* at 155, 72 S.W.3d at 88. The supreme court decided otherwise. So it vacated this court's decision and affirmed the circuit court, holding that the administrators' pro se complaint was the fruit of the unauthorized practice of law and thus a legal nullity. *Id.* at 160, 72 S.W.3d at 93.

*Davenport* informs the question here, though it does not squarely answer whether Miesner may raise her nullity argument for the first time on appeal. The appellees naturally contend that she cannot.

*McKenzie v. Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973), another supreme court case, also generally guides us. There the court wrote:

> [P]roceedings in a suit instituted or conducted by one not entitled to practice are a nullity, *and if appropriate steps are timely taken* the suit may be dismissed, a judgment in the cause reversed, or the steps of the unauthorized practitioner disregarded.

*Id.* at 333, 500 S.W.2d at 360 (emphasis added) (internal citations omitted).

For this case's purposes, we believe the unauthorized-practice-of-law issue had to be raised and ruled on by the circuit court, like nearly every other issue, including constitutional ones, to preserve it for appeal. *See, e.g., Mason v. State*, 2014 Ark. App. 285, at 5, 435 S.W.3d 510, 513 ("Even when the issue is constitutional in nature, an argument is not preserved on appeal unless the appellant raised and made the argument at trial and obtained a ruling on it; nor will a particular theory be addressed on appeal if it was not presented below."). We grant that, in *Diamond Enterprises, Inc. v. Arvest Bank*, 2012 Ark. App. 710 (per curiam), this court dismissed an appeal because the notice of appeal filed in circuit court by a pro se corporation was a nullity and thus did not invoke this court's appellate jurisdiction. *Id.* at 2. But unlike a notice of appeal, which is still an appellate-jurisdictional filing for the most part, see *Wandrey v. Etchison*, 363 Ark. 36, 39–42, 210 S.W.3d 892, 895–96 (2005), the probate documents filed by or on behalf of Relyance Bank in this case are not appellate-jurisdictional filings. So *Diamond* does not require, as a matter of stare decisis, that we address the unauthorized-practice issue for the first time on appeal.

IV.

We now turn to the heart of the parties' dispute: the Agreement. Here we also have preservation problems.

On appeal, "[p]robate cases are reviewed de novo . . . [and] we will not reverse the probate judge's findings of fact unless they are clearly erroneous. . . . A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed." *Snowden v. Riggins*, 70 Ark. App. 1, 7–8, 13 S.W.3d 598, 602 (2000) (citations omitted).

A.

Some testimony from the June 2016 hearing on the bank's petition is important to know. At the start of the hearing, before the court received any testimony, Miesner (acting pro se) argued that her mother was under duress and was ill with chemotherapy and cancer when the Agreement was signed. During Relyance Bank's direct examination of trust officer Richard Metcalf, the following colloquy occurred:

| | |
|---|---|
| ATTORNEY OWENS: | The bank had previous to the estate had acted as guardian? |
| METCALF: | Limited guardian. |
| ATTORNEY OWENS: | As limited guardian for the . . . that was actually the bank was Pine Bluff National Bank at that time? |
| METCALF: | That's correct. |
| ATTORNEY OWENS: | Did you operated [sic] under the family settlement agreement that was drafted, or executed, in 2012 while you were acting as limited guardian? |

11

| | |
|---|---|
| METCALF: | Yes, we always felt like that was what everything was happening on. |
| ATTORNEY OWENS: | So when dealing with Ms. Allred during her lifetime did she ever state to you that she did not want you to honor the family settlement agreement? |
| METCALF: | No, she never did. |
| ATTORNEY OWENS: | Did she ever state that these were not her wishes, true and direct wishes, that she wanted you to administer her estate? |
| METCALF: | No, she never told me anything. |

Metcalf also agreed that Joyce Allred, Sherry Miesner, Janet Herring, and Lewis Franklin Allred, Jr., were "all the necessary parties to the Allred family." He explained that Belinda Allred signed for Lewis as his attorney-in-fact.

Belinda testified that she executed the Agreement on behalf of her husband Lewis Franklin Allred, Jr., and that he approved her actions. She said that she is Lewis's only surviving heir and is his estate's administrator.

Sherry Miesner testified that her mother signed the Agreement "under pressure" because her sister (Janet Herring) had been misappropriating funds under the power of attorney Joyce had executed, in Herring's favor, in 2010. According to Miesner, the Agreement was written by an attorney who had never spoken to her mother; and neither she nor her mother knew what the term "successors in interest" meant. In her view, Joyce had used the term "successors in interest" to refer "to her bloodline, her children." Miesner said that her mother had written "lie" on the Agreement before signing it. On cross-examination, Miesner acknowledged that her mother had an attorney, Wilson Bynum,

when the Agreement was signed but maintained that she was not counseled on the document.

When asked by the court, Miesner said that paragraph 6(b) in the Agreement meant that "anybody that was deceased couldn't inherit, yet a third of everything mother and daddy worked for is going into my dead brother's estate." She also said that "we were under the impression only the signees of the agreement were privy to it. It was me and my brother and my sister and my mother which signed."

Miesner's husband, Phillip Miesner, testified that Joyce had cancer when the Agreement was signed, that she was bedridden, that her attorney never talked to her about it, and that Joyce "didn't think straight." He also said Joyce had told him on at least three occasions that "after L.F. had passed away that she hoped Diane didn't take her money." Miesner's daughter Krystal also said that Joyce (her grandmother) told her, "I want to make sure that Diane doesn't get anything after I pass away because that's not how I wanted it."

In this case, the circuit court orally ruled:

> I don't think there is any question but the Allred Family Settlement Agreement was an agreement that was reached by all the parties in settlement of litigation that was going on at the time, that even incorporated what had transpired in arriving at this settlement agreement. So, the Allred Family Settlement Agreement survives. It should survive and should be enforced.

After the hearing, but before the court entered a written order, Miesner hired an attorney. In a 8 July 2016 letter (filed July 13) the circuit court declined counsel's offer to "brief the issues." It wrote:

> Thank you for your letter of July 5, 2016, and your offer to brief the issues. I respectfully decline.

13

A full hearing on the merits was held June 13, 2016. Following the presentation of evidence, the Court approved the settlement agreement and fees to Relyance Bank.

On June 21, 2016, Mr. Tom Owens submitted an Order to the Court for approval and entry. I thought I had executed the order and returned it to Mr. Owens. I discovered today that the Order had not been entered. Enclosed for your information is a copy of the Order entered today, on the June 13, 2016 hearing.

The only issue remaining is whether your client might be held responsible for attorney's fees. A hearing will be scheduled for that sole issue.

The written order in this case, which was entered the same day as the court's letter, states

that the court "ratifies and approves" the Agreement. The court also wrote in part:

[T]he Court ratifies and approves the Allred Family Settlement Agreement executed on March 29, 2012. The agreement was reached in settlement of ongoing litigation at the time of the Agreement. The Agreement survives the death of Joyce Edna Priest Allred and should be enforced. All heirs of Joyce Edna Priest Allred, deceased, were parties to the Agreement and Sherry Miesner, Janet Herring, and Joyce Edna Priest Allred had legal counsel [at] the time of the execution of the Agreement.

B.

Miesner argues that the Agreement was not an enforceable contract for four reasons.

First, that "[Joyce] Allred was incompetent to sign the agreement, because of illness and lack

of capacity, and secondly she had a guardianship and the guardian did not sign." Relyance

responds that Miesner has raised the guardian-did-not-sign-the-agreement issue for the first

time on appeal and that we should not consider it. It further argues (1) that the record

contains no testimony or medical records supporting a finding of incompetency or

incapacity, (2) Joyce was represented by an attorney when the document was signed, and

(3) the Agreement was signed by all interested parties—so it is enforceable.

SLIP OPINION

Because we cannot find anywhere in the record where the circuit court expressly ruled on Miesner's arguments about her mother's ability to contract, we will not address them. *See Woods v. Woods*, 2013 Ark. App. 448, at 4 (declining to decide an issue a party pleaded and argued because the court did not mention the issue in "its comments from the bench, its letter opinion, or the divorce decree"). We do not presume a ruling from a circuit court's silence. The appealing party must obtain a ruling from the circuit court to preserve an issue for appeal. *Id.*; *see also Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116.

Second, Miesner argues that "Lewis Allred did not sign the document, and there was no showing that he authorized Belinda to sign for him." Relyance says that this argument has also been raised for the first time on appeal and that, in any event, the circuit court could have relied on Belinda's testimony, meaning the statement that she (Belinda) signed the Agreement on Lewis's behalf. On this point, Miesner's argument here is different than the one she argued to the circuit court. A party cannot change horses midstream. *See Jarrett v. Brand*, 2017 Ark. App. 276, at 3–4; *Williams v. Liberty Bank*, 2011 Ark. App. 220, 382 S.W.3d 726. In Miesner's "affidavit to object to claim against estate" filed in circuit court in March 2016, she stated that Belinda Diane Allred was "not privy" to the Agreement. Then, in her April 2016 "opposition and reply to motion of dismissal," Miesner said any gift made to Lewis had lapsed under the uniform probate code. During the June 2016 hearing, Miesner argued, "I do not think that a third of the money should go into my brother's estate for Diane Allred. He predeceased my mother by two and one-half years."

Now she argues that Belinda lacked authority to bind Lewis to the Agreement. We decline to address the vacillating arguments.

Miesner also argues that there was no assent to the Agreement's terms because the parties thought the document allowed only blood relatives to receive a benefit under the Agreement and "[m]utual assent to an agreement and its terms is a foundational requirement, which must be satisfied, for an enforceable agreement." Relyance says the Agreement's merger clause defeats Miesner's argument and that she, her sister, and her mother were all represented by attorneys when the document was signed.

"[T]o make a contract there must be a meeting of the minds as to all terms, using objective indicators." *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005). Parties must manifest assent to the particular terms of the contract. *Id.* "For a party to assent to a contract, the terms of the contract must be effectively communicated." *Id.* at 577, 203 S.W.3d at 80 (citing *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991)). In this case, the contracting parties agreed that "[t]he terms of this Agreement will bind and benefit the parties and their successors in interest" "[i]n consideration of the cessation of the [2011] Interpleader Action and to avoid any further controversy regarding the management of the financial affairs of Joyce E. Allred during her remaining lifetime and after her death[.]" The parties indicated their mutual assent by signing the document. Apparently there was a subsequent dispute about what "successors in interest" meant (the phrase is undefined in the contract), but Miesner offered no evidence or explanation why the parties' understanding of that phrase destroyed the ability to contract *at all*.

Fourth, Miesner argues that there was a mutual mistake because "the parties thought the purported family settlement document pertained to blood relatives, not Belinda personally." She reasons that the court found the contract's terms ambiguous because it allowed parol evidence on her own (and others') understanding that the document applied only to "blood relatives." Relyance counters that the Agreement is unambiguous, that there was ongoing litigation, and that the merger clause means that Miesner's mutual–mistake argument must fail.

Mutual mistake is a mistake common to both parties. *Mitchell v. First Nat'l Bank in Stuttgart*, 293 Ark. 558, 739 S.W.2d 682 (1987). Before a mutual mistake can affect the contract, the mistake must be of an existing or past material fact that is at the heart of the contract. *Id.* A contract may be rescinded for a mutual mistake of a material fact. *Id.* A court may also grant other equitable relief. *See, e.g.*, *Mikus v. Mikus*, 64 Ark. App. 231, 981 S.W.2d 535 (1998) (reformation). This is because the writing fails to reflect the parties' true understanding. *Kohn v. Pearson*, 282 Ark. 418, 670 S.W.2d 795 (1984).

Here, "mutual mistake" was never pleaded as a contract defense, nor did the circuit court rule on the question of mistake one way or the other. Likewise, the court did not expressly rule on Miesner's arguments about the parties' understanding of the contract terms related to successors in interest or "blood relatives." So we will not address them. *See Woods, supra.*

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Robert S. Tschiemer*, for appellant.

17



*C. Thompson "Tom" Owens*, for appellee.